IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUSTIN C-H.[1],

       Plaintiff,

v.

Commissioner of the Social Security Administration,

       Defendant.

_____

Civ. No. 1:19-cv-00208-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for supplemental security income and disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On April 6, 2015, Plaintiff filed an application for benefits, alleging disability as of May 14, 2012. Tr. 17.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 17–26. Plaintiff argues the ALJ erred in rejecting the opinion of Plaintiff's primary treating physician, failing to consider the opinions of treating physicians, and rejecting Plaintiff's testimony regarding the extent of his limitations. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: ankylosis of left ankle status post ankle fusion and resulting reflex sympathetic dystrophy syndrome, degenerative joint disease of the right knee, and degenerative disk disease. Tr. 20. The ALJ concluded Plaintiff had the RFC to perform sedentary work with the following relevant limitations: that he never climb ladders, ropes, or scaffolds, avoid hazardous machinery and unprotected heights, and is limited to occasional use of foot controls with his lower left extremity. Tr. 21. Plaintiff argues the ALJ did not capture the full extent of his limitations. The Court addresses each of Plaintiff's arguments in turn.

### 1. Medical Opinions

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such specific and legitimate reason to reject a treating doctor's opinion is if there is an incongruity between it and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041. Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

a. Primary Treating Physician

Although the ALJ acknowledged Dr. Balog's diagnosis of complex regional pain syndrome, the ALJ concluded "the medical evidence of record does not support Dr. Balog's extreme opinions regarding the claimant's limitations." Tr. 24. In a Medical Source Statement, Dr. Balog opined that Plaintiff could: stand for less than two hours in an eight hour workday and for only ten minutes at any one time; sit for two hours each workday for up to twenty minutes at a time; and walk for a half-block before needing to rest. Tr. 834.[3] The ALJ disagreed, concluding the record as a whole indicated that while Plaintiff was limited, he could perform sedentary work with additional restrictions.

The ALJ did not err in in giving less weight to the more "extreme" opinions of Dr. Balog. As noted by the ALJ, Dr. Balog's opinion was a general form, supported by few objective or clinical findings. *See* Tr. 833 (noting clinical findings and objective signs were "Increased pain on ambulation, sensitive to touch/temp changes ↓ range of motion following ankle fusion"); *see also* Tr. 25 (ALJ noting "These opinions are without substantial support from any clinical or diagnostic findings, which obviously renders the opinion less persuasive."). The ALJ also noted Dr. Balog's standing and sitting restrictions were "quite conclusory, providing very little explanation of the evidence relied in forming that opinion." Tr. 25. These are valid reasons for providing Dr. Balog's more severe restrictions little weight. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (2004).

Additionally, as noted by the ALJ, other evidence in the record supported the conclusion that Plaintiff was capable of performing a limited range of sedentary work as provided in the RFC. Tr. 24-25. When weighing a medical opinion, the ALJ must consider that opinion in

---

[3] Dr. Balog also opined that Plaintiff could never climb ladders and could only rarely crouch or climb stairs. Tr. 835. The ALJ determined Plaintiff could never climb ladders and could only occasionally climb stairs and crouch. Tr. 21.

4 – OPINION AND ORDER

relation to the record as a whole. 20 C.F.R. § 404.1527(c)(4). Substantial evidence supports the ALJ's rejection of Dr. Balog's more severe limitations. Plaintiff testified that he is able to cook, drive his kids to school and back, and complete basic chores such as housework and shopping. Tr. 47–48. The ability to perform these activities is supported by his Spouse's Third-Party Adult Functional Report, which reiterates that he is able to cook, do laundry, drive, and shop. Tr. 250–51. Plaintiff does not require the use of any sort of walking assistive device, such as a cane. Tr. 50. The ALJ also pointed to evidence in the record indicating Plaintiff performed some work during the alleged period of disability.

The ALJ also noted Dr. Balog's more extreme limitations were not supported by the medical evidence of record. Tr. 24. This finding is supported by substantial evidence in the record. Although Dr. Balog opined Plaintiff could walk only one-half block before needing to rest, the ALJ noted that objective findings upon examination indicated Plaintiff had normal bulk and tone in his lower extremities, with no signs of atrophy. Tr. 23. Additionally, in September 2014, one year after Plaintiff's ankle fusion surgery, Plaintiff's podiatrist noted Plaintiff "is walking with a lot greater security and less discomfort. His overall quality of life has improved. . . . He is currently walking without the brace today, which I think is fine. He is free to increase his activities as he sees fit." Tr. 421. Four months later, upon discharging Plaintiff from his care, the podiatrist noted that other than some discomfort in colder weather, "he feels like the left ankle is doing great." Tr. 422. Plaintiff walked with a shortened stride but no limp and the podiatrist opined "He is doing great."[4] Tr. 422.

---

[4] In contrast to the podiatrist's opinion that Plaintiff "is doing great," Dr. Balog's notes from this time period state Plaintiff complained of constant ankle pain averaging a 6 on a 10 point scale. Tr. 459. Dr. Balog noted Plaintiff's "pain is not well controlled on the current medication regimen." Tr. 459.

5 – OPINION AND ORDER

As outlined below, the ALJ also concluded that the record indicated relief from pain medication would allow Plaintiff to perform sedentary work with restrictions. Although Plaintiff argues another interpretation of the record is reasonable—i.e., that Dr. Balog's opinion demonstrates Plaintiff's physical limitations render him disabled—that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

      b.  <u>Other Treating Physicians</u>

Plaintiff contends that the ALJ erred by not discussing the medical opinions from Drs. Jansen, Puziss, and Gentile. The Court disagrees.

Before a medical opinion from a treating physician can be set aside, the ALJ "must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Cotton v. Bowen*, 799 F2d 1403, 1408 (9th Cir. 1986). However, it is only medical opinions that receive this special weight in disability determinations. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)." 20 C.F.R. 404.1527(a)(1). These include "symptoms, diagnosis, prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.*

Dr. Jansen did not offer a medical opinion as to Plaintiff's abilities. Her progress notes are limited to an overview of Plaintiff's medical history of the present illness, past medical history and the very basic notes of a physical exam. Tr. 346–49. She did not opine on any specific restrictions Plaintiff might have. Instead, Dr. Jansen noted under "occupation" that

Plaintiff is "disabled/unable to work." Tr. 347. A physician's opinion that one is "disabled," however, is not a medical opinion but instead an opinion on an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d).

Similarly, Dr. Puziss did not offer a medical opinion in regard to Plaintiff's restrictions. He first discussed the medical history of Plaintiff, and in doing so mentioned that Plaintiff "has not worked since the accident because he cannot do the lifting, bending, and stooping. Before the accident he was buying and selling car parts." Tr. 821. This note is not an independent judgement of Plaintiff's limitations, but merely a recitation of Plaintiff's subjective statements as to his own limitations.[5] Similar to Dr. Jansen's comment that Plaintiff is "disabled/unable to work," Dr. Puziss note of "[t]emporary total disability" is not a valid medical opinion entitled to any special significance. 20 C.F.R. § 404.1527(d).

Dr. Gentile, DPM, treated Plaintiff's left ankle impairment. The ALJ noted Plaintiff's "left ankle status post ankle fusion and resulting sympathetic dystrophy syndrome" was a severe impairment. Tr. 20. The ALJ specifically referenced Dr. Gentile's treatment notes. Tr. 23. Plaintiff argues the ALJ erred in not addressing Dr. Gentile's August 2013 note stating, "We will continue to discuss his return to work, however at this point in time, I do not see him fit for duty." Pl.'s Br. 9 (quoting Tr. 389). As with Dr. Jansen and Dr. Puzziz, Dr. Gentile's opinion that Plaintiff was not yet "fit for duty" is not a medical opinion for the ALJ to address. Additionally, Dr. Gentile referred not to Plaintiff's ability to perform any job in the national economy, but Plaintiff's former job working in the field for a cable company. That job was a medium job, not a sedentary job. Tr. 26; *see also* Tr. 41 (Plaintiff testified the job required climbing ladders).

---

[5] As discussed below, the ALJ concluded Plaintiff was less than fully credible as to the extent of his limitations. Additionally, the ALJ limited Plaintiff to sedentary work with additional limitations. Tr. 21.

7 – OPINION AND ORDER

Additionally, it appears clear that in the months following Plaintiff's ankle fusion surgery, Dr. Gentile believed Plaintiff was capable of sedentary work. In January 2014, Dr. Gentile noted, "We also discussed his return to work and where we are with this. Quite frankly, I think he is probably not going to be going back and doing anywhere near the same physical labor he was doing before. . . . *I think it will most likely be that he will be in a more sedentary capacity.*" Tr. 402 (emphasis added). One month later, Dr. Gentile recommended vocational rehabilitation. Tr. 404. In March 2014, Dr. Gentile noted, "He states he essentially has no pain unless he walks for over an hour, and even then, there is no sharp pain, just more aching in nature. . . . I think he is a great candidate for vocational rehab as I do not think he is going to be able to return to his previous functions." Tr. 405-06. In August 2014, Plaintiff's employer offered Plaintiff a position with modified duty meeting all of Dr. Gentile's restrictions. Tr. 416. Dr. Gentile commented, "Unfortunately this puts him in a very tough position because it is going to preclude him from being able to get the education he was trying to get secured for job rehabilitation or they have offered him a settlement." Tr. 416.

Finally, upon discharging Plaintiff in December 2014, Dr. Gentile noted, "He says he is doing well. He gets some discomfort in cold weather . . . but other than that, he feels like the ankle is doing great." Tr. 422. Although Plaintiff had a shortened stride, he did not walk with a limp. Tr. 422. Dr. Gentile opined, "He is doing great." Tr. 422.

### 2. Adverse Credibility Finding

The Plaintiff alleges severe limitations. A dog bite to his lower left leg in 2012 and the ensuing medical procedures triggered ongoing pain and other lower extremity issues. Tr. 276. A car accident in 2014 caused Plaintiff to suffer injuries to his neck. Tr. 576. In his Adult Functional Report, Plaintiff states that he cannot "sit, walk, or stand for any set period of time."

Tr. 229. He is not able to lift. Tr. 229.Pain medications cause his mind to "not function" and he does not drive because of this. Tr. 229.He further contends he is unable to walk a full block, is rarely able to participate in household chores, but is able to go grocery shopping. Tr. 232, 234. Plaintiff also alleges that he experiences depression. Tr. 235.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ looked first to the level of daily activity that the Plaintiff was able to do. He found the plaintiff was able to spend time with family and friends, go grocery shopping, drive, and has no issues with his personal care. Tr. 22-23[6]. The ALJ noted Plaintiff worked after his alleged onset date. Tr. 23. Although Plaintiff minimized this work, the ALJ pointed to an October 2017 medical record where Plaintiff "stated that he recently had less involvement in his business 'due to other obligations.'" Tr. 23 (quoting Tr. 837). In fact, notes from an appointment that month with Dr. Balag provide, "Medications provide satisfactory analgesia. The patient endorses improvements in both ADLs and their tolerance to activities." Tr. 841. The ALJ noted

---

[6] All activities were admitted to by the Plaintiff in the Adult Functional Report. Tr. 229–236.

9 – OPINION AND ORDER

Plaintiff regularly spend time with family and friends. Tr. 22. At the hearing, Plaintiff testified his three children stay with him three days each week, and with his ex-wife the rest of the week. Tr. 36. The ALJ reasonably concluded that the above activities were more consistent with a sedentary RFC as opposed to Plaintiff's allegations of completely disabling symptoms. Tr. 23.

The ALJ turned next to medical evidence that contradicted Plaintiff's statements about the frequency, intensity, and limitations of his symptoms. Plaintiff required multiple left ankle surgeries following a dog bite in 2012, and suffers from reflex sympathetic dystrophy, type II. Tr. 837. Though Plaintiff complains of chronic pain, falls caused by pain, and an average pain of an 8/10, the muscle bulk and tone in his left lower extremity was within normal limits and did not show signs of atrophy. Tr. 800, 837. The ALJ reasonably concluded that these objective findings of normal bulk and tone, with no signs of atrophy, were inconsistent with Plaintiff's testimony that he could stand for "no more than ten-ish minutes" and walk "about a half a block" before needing to rest. Tr. 45.

The ALJ also pointed to medical records indicating that medication alleviated Plaintiff's symptoms, at least to the point that Plaintiff was capable of performing sedentary work. Tr. 24 (noting that in March 2017 Plaintiff "stated his pain was 'well managed'"). This finding is supported by substantial evidence in the record. In October 2017, Dr. Balag noted, "Medications provide satisfactory analgesia. The patient endorses improvement in both ADLs and their tolerance to activities." Tr. 841. In March 2017, Plaintiff saw his podiatrist with complaints of an allergic reaction at the incision site following removal of hardware. Dr. Mah noted Plaintiff had "no other complaints at this time. Pt states that his pain is well managed[.]" Tr. 843. In June 2016, after an arthroscopic procedure on Plaintiff's knee, the doctor noted "His pain is controlled. . . . His gait is normal. . . [Plaintiff] is doing well. . . . He should continue doing range

of motion exercises, stationary bike, etc." Tr. 656. Substantial evidence supports the ALJ's finding that Plaintiff was able to perform sedentary work with restrictions.

The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of his limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 29th day of June, 2020.

      /s/ Michael McShane
Michael McShane
United States District Judge